UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| KOBBIE DOMINICK JOHNSON, | : | CIVIL ACTION NO. |
|  | : | 3:21-cv-413 (CSH) |
| Plaintiff, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| WEST HARTFORD POLICE | : |  |
| DEPARTMENT, | : |  |
| STATE OF CONNECTICUT, | : |  |
| TOWN OF WEST HARFORD, | : |  |
|  | : | **SEPTEMBER 19, 2022** |
| Defendants. | : |  |

## INITIAL REVIEW ORDER AND ORDER TO UPDATE ADDRESS

**HAIGHT, Senior District Judge:**

Plaintiff Kobbie Dominick Johnson, a pretrial detainee at the Camden County Correctional Facility in Camden, New Jersey, commenced this action by filing a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with an application to proceed *in forma pauperis* ("IFP"). *See* Doc. 1 ("Complaint" & "IFP Application"). Per Court order, Johnson amended his IFP Application to correct its insufficiency (*i.e.,* Johnson's failure to file the requisite "Prisoner IFP Application" form). Doc. 8-10. Then, by decision and Order, Magistrate Judge Thomas O. Farrish granted Johnson IFP status. Doc. 11.

In his Complaint, Johnson brings his Section 1983 claim against three defendants: the West Hartford Police Department, the State of Connecticut, and the Town of West Hartford.[1] Johnson

---

[1] Johnson has listed the defendants in the case caption as "West Hartford Police Department West Hartford Connecticut/State of Connecticut." Doc. 1, at 1. He has left blank the portion of the

alleges that he was falsely arrested by the West Hartford Police Department and extradited to New Jersey. He seeks $5 million in damages. Doc. 1, at 6 (¶ 7, "Relief").

Because Plaintiff is incarcerated and seeks relief from governmental entities, the Court herein reviews his Complaint pursuant to 28 U.S.C. § 1915A(b) to determine whether his claim is subject to dismissal for failure to state a claim upon which relief may be granted.[2] "While the screening requirement contained in § 1915A(a) applies to complaints in which 'a prisoner seeks redress,' courts also routinely have applied the statute to screen complaints brought by pre–trial detainees." *Rogers v. Lamont*, No. 3:22-CV-66 (OAW), 2022 WL 3716446, at *1 (D. Conn. Aug. 29, 2022) (collecting cases).

## I. STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint seeking redress from a governmental entity, officer, or employee and dismiss any portion that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks

---

Complaint form asking him to list the defendants separately.  As it is not clear whether West Hartford and the State of Connecticut are intended to further describe the West Hartford Police Department, or to name two additional, separate defendants, the Court considers the Complaint to name three defendants.

[2] The Court notes that such a review is also appropriate under 28 U.S.C. § 1915(e)(2)(B) in light of Johnson's IFP status.  *See* 28 U.S.C. § 1915(e)(2)(B) (In an IFP action, "(2) [n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that-- . . . (B) the action or appeal-- (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.").

monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2). Although highly detailed allegations are not required, the Complaint must "contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This plausibility standard is not a "probability requirement" but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*

In reviewing the Complaint, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro Life Ins. Co.,* 648 F.3d 98, 104 (2d Cir. 2011) (citation and internal quotation marks omitted). *See also Cruz v. Gomez*, 202 F.3d 593, 596 (2d Cir. 2000). However, the Court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Faber*, 648 F.3d at 104 (quoting *Rolon v. Henneman,* 517 F.3d 140, 149 (2d Cir. 2008)). Moreover, "a formulaic recitation of the elements of a cause of action will not do." *Iqbal,* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, "determining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense." *Id.* at 663-64 (citing *Twombly*, 550 U.S. at 556).

Dismissal of the complaint is only appropriate if "it appears beyond doubt that the plaintiff

3

can prove no set of facts in support of his claim which would entitle him to relief." *Cruz*, 202 F.3d at 597 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). "This rule applies with particular force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se*." *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir.1998).

With respect to *pro se* litigants, it is well-established that "[p]*ro se* submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (*per curiam*)). *See also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'") (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

This liberal approach, however, does not exempt *pro se* litigants from the minimum pleading requirements described above: a *pro se* complaint must still "'state a claim to relief that is plausible on its face.'" *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). Therefore, even in a *pro se* case, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citation and internal quotation marks omitted). The Court may not "invent factual allegations that [the plaintiff] has not pled." *Id.*

## II. BACKGROUND

On October 2, 2020, Johnson was arrested by the West Hartford Police Department on a solicitation charge from 2012. Doc. 1, at 5 (¶ 6). He contends that he could not have committed

4

the alleged crime because he was in prison in New Jersey from June 29, 2012, until October 6, 2016. *Id.*

Johnson was taken to the West Hartford Police Department, processed, and fingerprinted. *Id.* at 5-6 (¶ 6). At that time, Johnson's name did not appear in Connecticut's database of criminal charges, so the West Hartford police contacted New Jersey officials to confirm Johnson's identity. *Id.* at 6 (¶ 6). In response, officials in Camden County, New Jersey, informed the West Hartford police that Johnson was a "person of interest" in a crime in the city of Camden. *Id.* A fugitive warrant was placed on Johnson, and he was transferred to Hartford Correctional Center to await extradition. *Id.*

### III.  DISCUSSION

Johnson asserts a claim for "false arrest" because there was no warrant for his arrest on a charge of solicitation or any other crime in Connecticut. Doc. 1, at 6 (¶ 7). This arrest allegedly resulted in "hardship" because he was then sent to Camden County Correctional Facility and lost his job, apartment, and car. *Id.*

Other than placing a check on the line in his Complaint (¶1a) to indicate that he brings his action under "42 U.S.C. § 1983," he has presented no underlying constitutional basis for his claim. Because he asserts that he was falsely arrested, the Court infers that he seeks to vindicate his right under the Fourth and Fourteenth Amendments to be free from unreasonable seizures.[3] The Fourth

---

[3] Plaintiff brings no state law or common law action for false arrest. However, "[c]laims for false arrest or malicious prosecution, brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for false arrest or malicious prosecution under state law." *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) (citing, *inter alia*, *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir.1996) (false

5

Amendment to the United States Constitution states that "the right of the people to be secure in their persons, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "The Fourth Amendment's search and seizure provisions are applicable to [state] defendants through the Fourteenth Amendment's Due Process Clause." *Tenenbaum v. Williams*, 193 F.3d 581, 602 n. 14 (2d Cir.1999) (citation omitted).  As set forth *infra*, although Plaintiff names three defendants, he fails to state a cognizable claim against any of them.

### A.     West Hartford Police Department

While a municipality is subject to suit under section 1983, *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 659 (1978), "[a] municipal police department . . . is not a municipality nor a 'person' within the meaning of section 1983." *Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 164 (D. Conn. 2005).  Rather, a municipal police department is "a sub-unit or agency of the municipal government through which the municipality fulfills its policing function." *Id.* "Because a municipal police department is not an independent legal entity, it is not subject to suit under section 1983." *Id.*  See also *Alexander v. U.S. Postal Serv.*, No. 3:19-CV-1295(VLB), 2020 WL 4735269, at *3 (D. Conn. Aug. 14, 2020) (noting that East Haven Police Department has no legal existence so any lawsuit would have to be asserted against municipality or individual officers); *Reed v. Hartford Police Dep't*, No. 3:03-CV-2417(SRU), 2004 WL 813028, at *2 (D. Conn. Apr. 6, 2004) (dismissing claim against Hartford Police Department and citing cases holding that municipal police department is not a person within the meaning of Section 1983 and thus not

---

arrest)).

subject to suit).  Accordingly, Johnson's claims against the West Hartford Police Department will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### B.     Town of West Hartford

Johnson also lists the Town of West Hartford as a defendant in his case caption. Doc. 1, at 1. "Claims against municipalities are considered under the standard for municipal liability established in *Monell*," 436 U.S. 658.  *Mayo v. Doe*, 480 F.Supp.3d 395, 402 (D. Conn. 2020). "A municipality cannot be found liable merely because it employs a tortfeasor." *Id.* (citing *Monell*, 436 U.S. at 691).

To state a cognizable claim for municipal liability, a plaintiff must demonstrate the existence of an officially adopted policy or custom that caused his injury and a direct causal connection between that policy or custom and the deprivation of a constitutional right.  *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007); *see also Monell*, 436 U.S. at 694.  Specifically, he must show that his rights were violated as a result of a municipal policy, a municipal custom or practice, or the decision of a municipal policymaker with final policymaking authority.  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (plurality opinion).  *See also Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000) (The unconstitutional deprivation must have been pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers[,] ... [or] pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision[-]making channels.") (quoting *Monell*, 436 U.S.  at 690–91). "[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy[.]" *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) (collecting cases).

7

A municipal custom is less formal than a policy and may be shown by the existence of a practice "so widespread as to have the force of law." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997) (citing *Monell*, 436 U.S. at 690-91). The practice must be "permanent and well settled." *Praprotnik*, 485 U.S. at 127 (citation and internal quotation marks omitted). A practice cannot be inferred from a single incident. *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823-24 (1985). *See also Giaccio v. City of New York*, 308 F. App'x 470, 471-72 (2d Cir. 2009) (dismissing *Monell* claim where plaintiff identified, at most, only four examples of similar alleged constitutional deprivations – "evidence fall[ing] far short of establishing a practice that is so persistent or widespread as to justify the imposition of municipal liability") (citation and internal quotation marks omitted); *Bowles v. N.Y.C. Transit Auth.,* Nos. 00 Civ. 4213 (BSJ) (MHD), 03 Civ. 2073 (BSJ) (MHD), 2006 WL 1418602, at *16 n.31 (S.D.N.Y. May 23, 2006) (finding that "the combined evidence of only two incidents would still be insufficient to show a 'custom or usage' under the *Monell* standard").

Johnson has failed to demonstrate that West Hartford has an official policy – one that has been officially adopted and promulgated through official decision-making channels – that allows its police force to make "false arrests." Johnson has also failed to establish that West Hartford has a custom – a persistent and widespread practice – of its police force making "false arrests." He simply alleges a single incident of a constitutional deprivation, his arrest by unidentified West Hartford police officers. This allegation is insufficient to support a municipal policy, custom or practice. All claims against the Town of West Hartford will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### C. State of Connecticut

Finally, Johnson names the State of Connecticut under "defendants" in the case caption. The state, however, is immune from suit for damages under the Eleventh Amendment unless it has waived that immunity. *See Florida Dep't of State v. Treasure Salvors*, 458 U.S. 670, 684 (1982). Section 1983 does not abrogate state sovereign immunity. *Quern v. Jordan*, 440 U.S. 332, 343 (1979). Johnson alleges no facts suggesting that the state has waived its immunity in this case. Thus, any claim against the State of Connecticut is dismissed pursuant to 28 U.S.C. § 1915A(b)(2) in that it seeks relief from "a defendant who is immune from such relief."

### IV. ORDERS

For the foregoing reasons, Plaintiff's Complaint is DISMISSED in its entirety pursuant to 28 U.S.C. § 1915A(b). Johnson may file an amended complaint if he can identify, and name as defendants, individual officers who were personally involved in his arrest and can allege facts showing that his arrest was not supported by "probable cause." He must demonstrate that these officer(s) acted "under color of state law" in violation of "clearly-established rights of which an objectively reasonable official would have known." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir.1999). Otherwise, qualified immunity "shields police officers acting in their official capacity from suits for damages under 42 U.S.C. § 1983."[4] *Id.*

---

[4] "A police officer is entitled to qualified immunity shielding him or her from a claim for damages for false arrest where (1) it was objectively reasonable for the officer to believe there was probable cause to make the arrest, or (2) reasonably competent police officers could disagree as to whether there was probable cause to arrest." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) (citing *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir.1991)).

Plaintiff is advised that "[f]ederal and Connecticut law are identical in holding that probable cause to arrest exists when police officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Zainc v. City of Waterbury*, 603 F. Supp. 2d 368, 385 (D. Conn. 2009) (citation and internal quotation marks omitted). "[P]robable cause is a fluid concept . . . not readily, or even usefully, reduced to a neat set of legal rules. . . . While probable cause requires more than a mere suspicion[ ] of wrongdoing, its focus is on 'probabilities,' not 'hard certainties[ ]'. . . ." *Id.* (quoting *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007)).

Any amended complaint shall be filed on or before **October 10, 2022**. If no amended complaint is filed by that deadline, the case will be DISMISSED, and the Clerk will be directed to close the file.

Lastly, the Court notes that the last two Orders on the case docket were mailed to Plaintiff at his address of record at the Camden County Department of Corrections, 330 Federal Street, Camden, NJ 08103 (Inmate #4370348).[5]  However, these mailed Orders were "returned to court by postal service -- marked return to sender, not in CCCF [Camden County Correctional Facility]." Doc. 15. If Plaintiff is no longer incarcerated at that facility, it has become incumbent on him, as a "self-represented party," to "provide an address where service can be made upon [him]."

---

[5] The Court notes that the Clerk entered the inmate number for Johnson incorrectly on the case docket, omitting one numeral. On the case docket, that number appears as "#437048" and the correct number, as provided by Johnson on his Complaint and filings, is "#4370348). Doc. 1, at 3; Doc. 1-2, at 1. The Clerk is directed to mail a copy of this Order and any future copies of pleadings to the correct inmate number, if any.

10

D.Conn. L. Civ. R. 83.1(c)(2).   If he does not **update his address for service** on the case docket **on or before October 10, 2022**, the Court will deem the action abandoned by Plaintiff and thus DISMISS it.

    It is **SO ORDERED.**

    Dated:  New Haven, Connecticut
            September 19, 2022

                                              */s/Charles S. Haight, Jr.*
                                              CHARLES S. HAIGHT, JR.
                                              Senior United States District Judge